UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Stephen Bain,

    Plaintiff,

  v.                                                    Civil Action No. 1:07-CV-116

John Gorczyk, Steven Gold,
Robert Hofmann, James Donnon,
Keith Tallon, Michael O'Malley,
Robert Arnell, David Boulanger,
Raymond Flum, Kevin Oddy,
Christopher Owens, Kathleen
Lanman, Dr. Susan Wehry,
Dr. Erin Cody, Dr. Kurns, Dr. Rousse,
Dr. Leppman, Dr. Kutler, Prison
Health Services, Inc., Correctional
Medical Services, State of Vermont,
Vermont Department of Corrections,
John and Jane Doe,

    Defendants.

## REPORT AND RECOMMENDATION
(Doc. 113)

Plaintiff Stephen Bain, a Vermont inmate proceeding *pro se*, brings this action claiming that the defendants violated his constitutional rights and discriminated against him in violation of the Americans with Disabilities Act ("ADA"). Several of Bain's claims have been dismissed by the Court, including his underlying discrimination and constitutional claims. The sole remaining allegation is that he was transferred to an out-of-state prison facility in retaliation for asserting his rights.

The defendants now move for summary judgment on the retaliation claim. The motion is unopposed. For the reasons set forth below, I recommend that the motion for summary judgment be GRANTED, and that this case be DISMISSED.

**Factual Background**

Bain is an inmate in the custody and control of the Vermont Department of Corrections ("DOC"). On August 21, 1998, he was sentenced for a series of crimes that included two convictions for possession of stolen property (receiving 1-10 years on each conviction), one conviction for possession of marijuana (1-3 years), and a conviction for prescription fraud (1-2 years). He was also sentenced to serve a previously-suspended sentence for possession of stolen property (1-10 years). The sentences were to run concurrent with each other, beginning on September 1, 1998. The sentencing court recommended that Bain be allowed to serve his prison time at the DOC's Caledonia Community Work Camp ("work camp") in St. Johnsbury, Vermont.

Bain was housed at the work camp between September 10 and September 18, 1998, and again from October 21, 1998 through December 2, 1998. In a prior filing, the defendants explained that Bain was removed from the work camp in September 1998 for medical reasons, and in December 1998 for his own protection. (Doc 102-2, Arnell Aff. ¶ 24.) On April 10, 1999, he was released on furlough, and on November 15, 1999, after his minimum sentence expired, he was granted parole. On June 17, 2003, his parole was revoked and the conduct underlying his revocation gave rise to new charges. (*Id.* at ¶¶ 27-29.)

Upon his re-incarceration in 2003, Bain asked to be moved to the work camp but

was informed that as a detainee he was ineligible for such a program. On July 26, 2006, he was sentenced in state court as a habitual offender. After his sentencing, he allegedly asked again to be placed at the work camp. His eligibility was reviewed, and he was denied placement because he was unwilling to forego the use of narcotics for chronic pain. The DOC submits that inmates using narcotics are not allowed at the work camp for security and safety reasons. (*Id.* at ¶ 36.) The defendants also contend that Bain was temporarily ineligible for work camp placement because he was awaiting trial on a pending charge. (*Id.* at ¶ 26.) That charge was dismissed in December 2006. (*Id.*)

Bain confirms in his Complaint that when he spoke with his case worker about his work camp eligibility in 2006 "and also in early January 2007," he was asked if he would be willing to discontinue his use of narcotics for pain. In response, he alleged that the DOC's request was unreasonable, and was discriminatory under the ADA. (Doc. 4-1 at 6, Complaint ¶¶ 21-22.) He claims that he was then "promptly removed to internment, in Oklahoma." (*Id.* at ¶ 22.)

Bain was transferred out of Vermont on January 11, 2007. (Doc. 102-2, Arnell Aff. ¶ 39.) The Complaint asserts that the defendants sent him out of state "specifically to retaliate against him, pellucidly, because of pending court actions, and him asserting his protected rights." (Doc. 4-1 ¶ 24.) The defendants respond that inmates are routinely transferred out of state. (Doc. 113-2, Remolador Aff. ¶ 3.) They also argue that Bain's ADA claim is barred by the Eleventh Amendment; that the ADA does not provide for claims against individuals; that Bain's claims are barred by preclusion; and that Bain has failed to set forth a *prima facie* case of retaliation. As noted above, the defendants'

motion for summary judgment is unopposed.

## Discussion

**I.      Summary Judgment Standard**

Summary judgment is warranted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits reveal no genuine issue as to any material fact. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).   All facts, inferences, and ambiguities must be viewed in a light most favorable to the non-moving party.   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Initially, the burden is on the moving party to demonstrate the absence of a genuine issue of material fact.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   After the moving party has satisfied its burden, the non-moving party must assert specific facts demonstrating there is a genuine issue to be decided at trial.   Fed. R. Civ. P. 56(e)(2); *Liberty Lobby, Inc.*, 477 U.S. at 250.   The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."   *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.   There must be sufficient evidence upon which a reasonable fact finder could return a verdict for the non-moving party.   *Liberty Lobby, Inc.*, 477 U.S. at 248-49; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

When, as here, a party seeks dismissal or summary judgment against a *pro se* litigant, a court must afford the non-movant special solicitude.   *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006); *see also Sealed Plaintiff v. Sealed Defendant # 1*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se* . . . a court is obliged

to construe his pleadings liberally.'") (citations omitted)). Also, when a motion for summary judgment is unopposed, the court cannot simply grant the motion. "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citations and internal quotation marks omitted). "Moreover, in determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's [statement of material facts.] It must be satisfied that the citation to evidence in the record supports the assertion." *Id.*

**II.   Eleventh Amendment**

The defendants first argue that Bain's claim is barred by the Eleventh Amendment. With regard to retaliation claims brought under the ADA, the precise reach of the Eleventh Amendment's protections is not well established.

Bain's underlying discrimination claim — that he was entitled to serve his sentence at the work camp, and that the DOC's refusal to place him there violated his rights — is brought pursuant to Title II of the ADA. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of . . . a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Courts have held that Title II applies to state inmates. *Giraldi v. Bd. of Parole*, 2008 WL 907321, at *5 (N.D.N.Y. Mar. 31, 2008) (citing *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998)).

While his underlying claim may fall within the purview of Title II, Bain's retaliation claim is governed by Title V, which provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual [has] made a charge . . . under this chapter."  42 U.S.C. § 12203(a).  It has been held that a plaintiff is not required to succeed on his Title II claim in order to pursue a Title V retaliation claim.  *See Brady v. Dammer*, 573 F. Supp. 2d 712, 721 (N.D.N.Y. 2008).

The defendants first argue that Title V, insofar as it may be applied to state actors, invalidly abrogated Eleventh Amendment immunity and thus does not provide a cause of action.  (Doc. 113 at 5.)  Indeed, district courts in this Circuit have widely held that in passing Title V, Congress did not validly abrogate state sovereign immunity.  *See Padilla v. New York State Dep't of Labor*, 2010 WL 3835182, at *4 (S.D.N.Y. Sept. 13, 2010) ("every district court in this Circuit to consider the issue has concluded that sovereign immunity bars Title V claims"); *Warren v. Goord*, 2006 WL 1582385, at *17-20 (W.D.N.Y. May 26, 2006), *aff'd*, 2008 WL 5077004 (2d Cir. Nov. 26, 2008), *cert. denied*, 130 S. Ct. 1039 (2009); *Salvador v. Lake George Park Comm'n*, 2001 WL 1574929, at *3 (N.D.N.Y. March 28, 2001); *see also Chiesa v. New York State Dep't of Labor*, 638 F. Supp. 2d 316, 323 (N.D.N.Y. 2009).  This Court notes, however, that "[n]either the Supreme Court nor the Second Circuit has" ruled on the issue.  *Padilla*, 2010 WL 3835182, at *4.  Furthermore, with respect to retaliation claims based specifically upon Title II violations, courts in other circuits have found that there is no sovereign immunity for state actors.  *E.g. Demby v. Md. Dep't of Health and Mental Hygiene*, 2009 WL

415265, at *1 (D. Md. Feb. 13, 2009); *Mendez-Vazquez v. Tribunal General De Justicia*, 477 F. Supp. 2d 406, 411-13 (D.P.R. 2007) (dismissing an ADA Title II employment discrimination claim on Eleventh Amendment immunity grounds but allowing a related retaliation claim, brought under Title V, to proceed); *Sarkissian v. West Virginia Bd. of Governors*, 2007 WL 1308978, at *8 (N.D. W. Va. May 3, 2007). Finally, and keeping in mind Bain's claim that he was transferred in retaliation for having initiated litigation, at least one other court has declined to apply sovereign immunity to a Title V claim because it was linked to First Amendment violations asserted in the plaintiff's complaint. *Roberts v. Pa. Dep't of Pub. Welfare*, 199 F. Supp. 2d 249, 254 (E.D. Pa. 2002).

The defendants next argue that Title V does not provide a cause of action against individuals "in their personal capacity." (Doc. 113 at 7.) In the employment context, the Second Circuit has held that "the retaliation provision of the ADA . . . cannot provide for individual liability." *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010). The *Spiegel* court reasoned that because the retaliation provision of the ADA borrows its remedies from Title VII of the Civil Rights Act of 1964, and Title VII does not provide for individual liability, "it follows that" the retaliation provision in the ADA is also limited. *Id.* This same argument could be made with respect to a claim arising under Title II of the ADA, s*ee, e.g., Warren*, 2006 WL 1582385, at *19-*20, although at least one recent decision rejected any such parallel, concluding instead that Title II is not a close analog to Title VII and that individuals may therefore "be sued in their personal capacities for retaliation under the ADA." *Alston v. Dist. of Columbia*, 561 F. Supp. 2d 29, 40-42 (D.D.C. 2008).

In sum, the case law regarding the application of Eleventh Amendment immunity to

7

a Title V retaliation claim is not firmly established.   While cases from within the Second Circuit arguably favor the defendants with respect to both official capacity and individual capacity liability under Title V, the Court need not rely upon unsettled Eleventh Amendment jurisprudence for dismissal.   Instead, for the reasons set forth below, the Court should grant summary judgment in favor of the defendants because Bain's retaliation claim is barred by claim preclusion, and because he has failed to establish any genuine issues of material fact with respect to the merits.

### III.   Preclusion

The defendants next argue that Bain's retaliation claim is barred because it was previously raised, and finally disposed of, in the state courts.   The doctrine of claim preclusion "prevents parties from relitigating issues in subsequent litigation that were or could have been litigated in a prior action."   *Kesten v. Eastern Sav. Bank*, 2009 WL 303327, at *3 (E.D.N.Y. Feb. 9, 2009) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).   A federal court is required to give the same preclusive effect to a state court's treatment of an issue as the law of that state requires.   *Jenkins v. City of New York*, 478 F.3d 76, 85 (2d Cir. 2007); *see Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("It is now settled a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."); 28 U.S.C. §1738.

In Vermont, claim preclusion "'bars the litigation of a claim or defense if there exists a final judgment in former litigation in which the parties, subject matter and causes of action are identical or substantially identical.'"   *Bain v. Hofmann,* 993 A.2d 432, 434

8

(Vt. 2010) (quoting *Berlin Convalescent Ctr., Inc. v. Stoneman*, 615 A.2d 141, 143 (Vt. 1992)).  "A claim need not be actually litigated in the earlier proceeding; rather, the doctrine 'applies to claims that were or should have been litigated in the prior proceeding'" *Id.* (quoting *In re Cent. Vt. Pub. Serv. Corp.*, 769 A.2d 668, 673 (Vt. 2001)).  In one of Bain's recent state court appeals relating to an alleged denial of medications, the Vermont Supreme Court noted that the doctrine of claim preclusion "serves to 'protect the courts and the parties against the burden of relitigation, encourage reliance on judicial decisions, prevent vexatious litigation and decrease the chances of inconsistent adjudication.'"  *Id.* at 435 (quoting *Berlin Convalescent Ctr., Inc.*, 615 A.2d at 144).

      Relevant to this case, Bain brought what appears to have been a nearly-identical ADA action in state court regarding the DOC's refusal to assign him to the work camp.  Judge Crawford held a bench trial in November 2009, and concluded that Bain did not have a disability for purposes of the ADA.  Judge Crawford also rejected Bain's retaliatory transfer claim, raised post-trial, for lack of evidentiary support.  *Bain v. Hofmann*, Docket No. 810-12-07 Wncv (Vt. Sup. Ct. Washington County, Dec. 15, 2009).  That decision was upheld on appeal by the Vermont Supreme Court in an unpublished Entry Order.  *Bain v. Hofmann*, No. 2009-479, slip op. at 2 (Vt. Aug. Term 2010).

      In light of these state court decisions, Bain's current retaliatory transfer claim is now precluded.  Bain clearly had the opportunity to raise the claim in his state court proceeding, and once he did so he failed to support it with sufficient evidence.  Furthermore, DOC Commissioner Hofmann was the defendant in both cases, and Bain's current claim appears to be brought against Hofmann and DOC personnel generally, thus

rendering "the parties, subject matter, and cause(s) of action in both matters . . . the same or substantially identical" for purposes of preclusion.  *Faulkner v. Caledonia County Fair Ass'n*, 869 A.2d 103, 107 (Vt. 2004).   I therefore recommend that the Court GRANT the defendants' motion for summary judgment on the basis of claim preclusion.

## IV.   The Merits

Even assuming, for the sake of argument, that Bain's retaliation claim is not precluded, the claim nonetheless fails on the merits.   At the outset, prisoner retaliation claims are viewed "with skepticism and particular care," because "virtually any adverse action taken against a prisoner by a prison official — even those otherwise not rising to the level of a constitutional violation — can be characterized as a constitutionally proscribed retaliatory act."   *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).   Furthermore, conclusory allegations or denials are insufficient to avoid dismissal of a retaliation claim at summary judgment.   *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).   Accordingly, "[w]hen such claims, which are exceedingly case specific, are alleged in only conclusory fashion, and are not supported by evidence establishing the requisite nexus between any protected activity and the adverse action complained of, a defendant is entitled to summary judgment dismissing plaintiff's retaliation claims."   *McQuilkin v. Central New York Psychiatric Ctr.*, 2010 WL 3765847, at *14 (N.D.N.Y. Aug. 27, 2010) (citing *Flaherty*, 713 F.2d at 13).

To state an actionable claim for retaliation, Bain must establish "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the

10

plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002), *abrogated on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002); *see also Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002).   If Bain carries this burden, the defendants must show by a preponderance of the evidence that they would have taken action against him "even in the absence of the protected conduct." *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

Bain alleges that he spoke to his case worker and complained about a failure to accommodate his alleged disability.   Specifically, he complained that conditioning his work camp eligibility upon the cessation of his narcotic pain medications was both unreasonable and discriminatory under the ADA.   His retaliation claim alleges that after this discussion, he was "promptly removed" to an out-of-state facility.   He also claims that he was retaliated against "because of pending court actions."   (Doc. 4-1 ¶¶ 21-24.)

Bain's assertion of his rights, both to his case worker and in the courts, constituted protected activity.   *See, e.g., Espinal v. Goord*, 558 F.3d 119, 128-29 (2d Cir. 2009); *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).   The defendants focus their arguments on the second and third elements, arguing that Bain has failed to show either an adverse action or a causal connection.   To satisfy the adverse action prong, an inmate must show "'retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her . . . constitutional rights . . . .'"   *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (quoting *Dawes*, 239 F.3d at 493); *see also Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004).   If the retaliatory action at issue does not satisfy this

objective standard, it is "simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes*, 239 F.3d at 493. "This objective inquiry is 'not static across contexts,' but rather must be 'tailored to the different circumstances in which retaliation claims arise.'" *Id.* at 492 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999)). "In this regard, prisoners may be required to tolerate more than public employees or average citizens before a purportedly retaliatory action taken against them is considered adverse." *Jones v. Harris*, 665 F. Supp. 2d 384, 397 (S.D.N.Y. 2009) (citing *Thaddeus-X*, 175 F.3d at 386-87). The objective test "applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits." *Gill*, 389 F.3d at 381.

The Second Circuit has held that transfers to other facilities or housing units can, under certain circumstances, satisfy the adverse action requirement. *See Davis v. Kelly*, 160 F.3d 917, 920 (2d Cir. 1998) (transfer from one state prison facility to another constituted an adverse action); *see also Gill*, 389 F.3d at 384 (three weeks in "keeplock" sufficient to state claim for retaliation); *Morales*, 278 F.3d at 131-32 (transfer to psychiatric facility sufficient to state claim for retaliation). Here, Bain contends that he was sent to an out-of-state facility that prohibited dispensing narcotics, and that transport to that facility consisted of a 50-hour bus ride in shackles. (Doc. 4-1.) In some situations, the denial of adequate medical treatment could "suffice to deter a similarly situated individual of ordinary firmness from filing a constitutionally protected grievance" or complaint. *See Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009). Previously in this case, however, Bain failed to show that narcotics were required to address his pain.

12

*Bain v. Gorczyk*, 2010 WL 1257646, at *6 (D. Vt. Feb. 19, 2010) (finding that "despite Bain's claims to the contrary, more than one physician concluded that narcotics were not his best option").  It is therefore difficult to conclude that, upon transfer to a facility that did not dispense narcotics, an inmate "of ordinary firmness" who did not require narcotics would be deterred from exercising his rights.  *Davis v. Goord*, 320 F.3d at 353.

As to the bus transport, there is no indication in the record that any Defendant was aware of the conditions on the bus.  In fact, in separate litigation brought by Bain against DOC defendants and the company that administered the transport, the Vermont defendants were dismissed for lack of personal involvement.  *Bain v. Transportation Corp. of America*, 2008 WL 2625234, at *4-*7 (D. Vt. June 30, 2008).  Without such a showing, there is no basis for looking beyond the simple act of transferring Bain to an out-of-state facility.  Indeed, as one court recently stated, "it is appropriate for a court to focus on the adverse action *caused by the defendant or defendants in question* (rather than whatever bad things happened to the plaintiff following the taking of adverse action by the defendant or defendants)."  *Barnes v. Craft*, 2008 WL 3884369, at *12 (N.D.N.Y. Aug. 18, 2008).

Perhaps Bain's strongest argument on the "adverse" prong is that his transfer was out of state.  *See, e.g.*, *Smith v. Warden, New Hampshire State Prison*, 2006 WL 1425063, at *7 (D.N.H. Apr. 25, 2006) (holding that inmate could state a claim of retaliation if out-of-state transfer "was made in reprisal for his exercise" of constitutional rights); *Price v. Wall*, 464 F. Supp. 2d 90, 97 (D.R.I. 2006) ("In the prison context, actions comparable to a transfer to segregation or an involuntary transfer to an out of state prison can generally be considered 'adverse' to an inmate.") (citations omitted).  However, aside from the fact

13

that the Oklahoma facility did not dispense narcotics, Bain has not alleged any difference in the quality of the facilities, or that he was injured by the fact that he was no longer in Vermont.   In the absence of any such allegations, Bain has failed to adequately support his claims of "retaliation based on a transfer from one prison to another."   *Young v. Superintendent Kadien*, 2010 WL 1909566, at *3 (W.D.N.Y. May 7, 2010) (citing *Warren*, 2006 WL 1582385).

Furthermore, as this Court noted in a prior case, "the principal flaw in [Bain's] retaliation claim is the causal link element."   *Bain*, 2008 WL 2625234, at *6.   The defendants have submitted evidence to show that Bain's transfer had been under consideration for several months.   Specifically, the affidavit of Alex Remolador attests that inmates are routinely transferred out of state once medically cleared, and that Bain was not eligible for transfer until his sentencing in June 2006.   (Doc. 113-2 ¶ 2.)   On August 21, 2006, Remolador met with Bain and informed him that he was a candidate for an out-of-state transfer.   Bain asked about placement at the work camp, and Remolador responded that he would look into Bain's eligibility.

As explained above, Bain was not eligible for the work camp while charges were pending against him.   Those charges were dropped in December 2006.   At that time, the work camp Superintendent asked Bain's case worker to inquire as to whether Bain would be willing to forego his narcotic medications.   (Doc. 113-3, Marsh Aff. ¶ 3.)   Bain declined, and in January 2007 was transferred out of state.

Bain contends that he was transferred because he claimed the DOC was violating his rights under the ADA, and because he was engaged in civil litigation against the DOC.

14

He has little evidence to support this claim other than the proximity of the transfer to conversations with his case worker. "To establish causality by temporal proximity alone, the proximity between the protected activity and the adverse employment action must be very close." *Grant, Jr. v. Connecticut Dep't of Corr.*, 2010 WL 2584763, at *6 (D. Conn. June 22, 2010) (citing *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)). Bain's first piece of federal litigation involving an ADA claim was filed in March 2006. *See Bain v. Hofmann*, Case No. 2:06-CV-59 (Doc 6). The defendants report that his first state court filing against the DOC was in July 2004. (Doc. 113 at 3). Consequently, his assertions of discriminatory conduct in December 2006 and January 2007 did not raise new claims, and were not his first threats of litigation. A transfer several months, if not years, after litigation had already been commenced, absent any other supporting facts, is not the sort of temporal proximity that would support a claim of retaliatory conduct. Moreover, and notwithstanding any conversation with his case worker, the record makes clear that the transfer had been under consideration for several months.

In order to carry his burden at summary judgment, Bain must show that the protected conduct was a "substantial or motivating factor" in a prison official's decision to take retaliatory action. *Mount Healthy City Sch. Dist. Bd. of Educ.*, 429 U.S. at 287; *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir.2007); *Dawes*, 239 F.3d at 492. Stated somewhat differently, Bain's "claims must render it unlikely that the prison official would have performed the act absent a retaliatory purpose." *Rivera v. Senkowski*, 62 F.3d 80, 86 (2d Cir. 1995). The facts before the Court in this case make no such showing. Since

15

filing his Complaint, Bain has not offered any additional support for his largely-conclusory claims of retaliation. He has failed to oppose summary judgment, and the defendants have submitted affidavits to show that the timing of his transfer was unrelated to any protected activity. With no additional evidence before the Court, and given the Second Circuit's guidance that "particular care" be given to prisoner retaliation claims, *Dawes*, 239 F.3d at 491, I recommend that the defendants' motion for summary judgment be GRANTED, and that this case be DISMISSED. *See, e.g., Palacio v. Goord*, 338 Fed. App'x 37, 38 (2d Cir. 2009) (affirming dismissal of prisoner retaliatory transfer claim for lack of supporting evidence).

## Conclusion

For the reasons set forth above, I recommend that the defendants' motion for summary judgment (Doc. 113) be GRANTED. Because Bain's claim of retaliation was the only remaining claim in the case, I further recommend that the case be DISMISSED.

Dated at Burlington, in the District of Vermont, this 3rd day of December, 2010.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation. *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).